953 F.2d 640
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Clarence A. CLARKE, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Israel PINK, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Sandra Walker RODNEY, Defendant-Appellant.
 Nos. 91-5538, 91-5539 and 91-5540.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 28, 1991.
Decided Jan. 30, 1992.
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria. T.S. Ellis, III, District Judge. (CR-90-377-A)
 Argued: Thomas Crane Carter, Alexandria, Va., for appellant Pink; Lance Daniel Gardner, Fairfax, Va., for appellant Rodney; Paul Howard Zukerberg, Washington, D.C., for appellant Clarke; Christopher John Kelly, Special Assistant United States Attorney, Alexandria, Va., for appellee.
 On Brief: Navron Ponds, Washington, D.C., for appellant Clarke; Kenneth E. Melson, United States Attorney, Mark J. Hulkower, Assistant United States Attorney, Alexandria, Va., for appellee.
 E.D.Va.
 AFFIRMED.
 Before K.K. HALL and WILKINSON, Circuit Judges, and JOSEPH H. YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Following a jury trial, appellants Clarence Clarke, Israel Pink, and Sandra Rodney were convicted for their involvement in a cocaine distribution ring that operated in Winchester, Virginia. All three defendants were convicted of conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846 (1988). Clarke also was convicted of possession with intent to distribute a detectable amount of cocaine, in violation of 21 U.S.C. § 841(a)(1) (1988) and 18 U.S.C. § 2 (1988); and possession of five or more grams of crack, in violation of 21 U.S.C. § 844(a) (1988). Pink and Rodney additionally were convicted of unlawful use of a communication facility, in violation of 21 U.S.C. § 843(b) (1988) and 18 U.S.C. § 2 (1988). Finding no merit to the issues raised on appeal, we affirm all convictions as to all defendants.
 
 
 2
 Clarke first challenges the circumstances surrounding his arrest at Dulles Airport on Fourth Amendment grounds. He raised the same issues in a motion to suppress evidence seized during the arrest. The district court conducted a hearing on the motion at which time Clarke and Charles Hardison, an investigator affiliated with a Drug Enforcement Agency ("DEA") task force on narcotics, testified. The district court found Hardison's testimony to be more credible and found no Fourth Amendment violation.
 
 
 3
 The district court's factual determinations will be disturbed only if they are clearly erroneous. United States v. Wilson, 895 F.2d 168, 170 (4th Cir.1990). Our review of the record reveals no error.
 
 
 4
 At 3:00 p.m. on September 20, 1991, Hardison and two colleagues were monitoring a flight coming into Dulles from Miami, a known source city for narcotics that are distributed in the Washington, D.C. area. The men were not in uniform and were not displaying visible weapons.
 
 
 5
 Hardison saw Clarke emerge from a gate, carrying a small suitcase. Clarke appeared to be nervous as he looked at Hardison, immediately looked away, and walked very quickly to the mobile lounge that would take passengers to the terminal. During the entire ride to the terminal, Clarke stared at the driver's area of the lounge, and he was breathing so hard that Hardison could see his chest heaving. Clarke was one of the first people to leave the mobile lounge and passed the baggage area without picking up any luggage.
 
 
 6
 As Clarke headed to a daily parking area, Hardison said, "Excuse me." Clarke turned, and Hardison identified himself as a police officer. He asked if Clarke would mind speaking with him. Clarke replied, "Yes,"[1] and he placed his suitcase on the ground stating that he had just arrived from Miami and had left his ticket on the plane. When asked for proof of identity, Clarke handed Hardison his Virginia driver's license indicating a Winchester address. Clarke appeared to be nervous, and his voice was so shaky that Hardison had to pay close attention to understand him.
 
 
 7
 Hardison asked about the Miami trip. Although Clarke said that he had been visiting a cousin for two weeks, he could not remember his cousin's address. Further, he could not give a definite place of employment. Although he spoke with an accent, Clarke had no visa or passport, and he identified his nationality as "Bahamese," a term which Hardison had never heard. Hardison explained the mission of the DEA task force and asked if Clarke was carrying narcotics. Clarke said he was not.
 
 
 8
 Hardison did not tell Clarke that he suspected he was carrying narcotics. As they talked in a conversational tone, another agent was three or four feet behind Hardison. Hardison did not touch Clarke.
 
 
 9
 Hardison asked Clarke if he could search his suitcase. Clarke said, "Go ahead. I don't have any drugs." Concealed in a shoe inside the bag was a small brown paper bag containing three ziploc bags. Each bag contained a white, powdery substance, which appeared similar to cocaine. The method of packaging the substance was similar to packages containing cocaine seen by Hardison in other investigations.[2] Clarke informed Hardison that the substance was incense.
 
 
 10
 Hardison told Clarke that he was being detained and walked Clarke to the airport's police station. Because the field test of the powder was to take place in a security area, Hardison conducted a pat-down search of Clarke. The search yielded a hard object just beneath Clarke's belt. When Hardison asked what it was, Clarke was silent. Hardison removed the object, the size of a shotgun shell, which was wrapped in duct tape. Hardison, aware that this was a typical packaging material for narcotics, arrested Clarke.
 
 
 11
 A further search incident to the arrest revealed two rectangular objects, also wrapped in duct tape, inside Clarke's shoes. A field test on the contents of one of these containers was positive for cocaine. Hardison estimated that the two packages contained 469 grams of cocaine. Agents also discovered approximately 1100 baggies, frequently used in distributing narcotics, tucked inside a pair of socks in Clarke's suitcase.
 
 
 12
 After Clarke was given his Miranda rights, see Miranda v. Arizona, 384 U.S. 436 (1966), he agreed to talk to Hardison. He told Hardison that he was transporting the drugs from Miami for delivery to "Rodigan" and "Israel" in Washington. Somewhat skeptical because of the Winchester address on Clarke's license, Hardison called a Winchester police officer, who said that he knew Winchester residents named Clarence Clarke, Israel Pink, and Calvin Rodney, or "Rodigan."
 
 
 13
 Clarke subsequently agreed to participate in a controlled delivery of the cocaine after agents called informant Cathy Lewis in Winchester and asked her to get in touch with either Pink or Calvin Rodney. Lewis reached Pink and told her that Clarke's car had broken down. Pink then called Clarke at Dulles three times trying to verify Clarke's identity. Sandra Rodney assisted Pink by speaking to Clarke during at least one of the three telephone calls. Once she was confident that he was, in fact, Clarke, Pink relayed the message to Calvin Rodney and his wife, Sandra, who drove to Dulles to meet Clarke. They were arrested when Clarke gave them the narcotics. Pink was arrested later.
 
 
 14
 Clarke claims on appeal that the encounter at Dulles violated his Fourth Amendment rights which protect persons from unreasonable seizures. A person is seized within the meaning of the Fourth Amendment if there is a demonstration of official authority such that "a reasonable person would have believed that he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554 (1980). A person is not seized when he is approached by police in a public place, asked if he will answer questions, and asked questions after indicating his willingness to listen. Florida v. Royer, 460 U.S. 491, 497 (1983); United States v. Gray, 883 F.2d 320, 322-23 (4th Cir.1989).
 
 
 15
 In Gray, this court identified six factors that courts have used to determine whether an officer's display of authority constitutes a seizure. The factors are:
 
 
 16
 (1) the number of police officers present ...; (2) whether the police officers were in uniform and whether they displayed their weapons....; (3) whether the officer touched the defendant or made any attempt to physically block his departure or restrain his movement ...; (4) whether the officer's questioning was "conversational" rather than "intimidating"--i.e. did the officer raise his voice or threaten the defendant ...; (5) whether the officer informed the defendant that he positively suspected him of illegal activity rather than treating the encounter as "routine" in nature ...; and (6) whether, if the officer requested from the defendant either his plane ticket or some form of official identification, the officer promptly returned it.
 
 
 17
 Id. (citations omitted). This is a non-exhaustive list of factors frequently used; courts ultimately look to the totality of the circumstances to decide whether a seizure has occurred. Id. at 322.
 
 
 18
 The facts in this case describe a scenario meeting all the Gray criteria. The initial encounter between Hardison and Clarke was consensual and did not constitute a seizure under the Fourth Amendment.
 
 
 19
 Clarke argues that, even if there was no seizure initially, the consensual nature of the encounter "quickly evaporated." Contrary to Clarke's assertions in support of this argument, he was not compelled to remain with the officers or to answer their questions. He was not "literally stopped" by Hardison, Hardison's gun was not displayed, and "several" officers did not intimidate him by their presence. Further, although Clarke speaks English with an accent, he was able to comprehend what was said to him. His contention that he has difficulty with English was belied by his testimony at the suppression hearing. Cf. United States v. Patino, 649 F.2d 724, 727 (9th Cir.1981).
 
 
 20
 Clarke also contends that the pat-down search conducted before entering the security area violated his Fourth Amendment rights. Hardison was confronted with a person who had arrived on a flight from Miami, a source city for narcotics. Clarke's behavior and voice disclosed that he was very nervous, he had checked no baggage, and he was in an obvious hurry to leave the airport. These factors, coupled with the discovery in the suitcase of a white powdery substance resembling cocaine, gave Hardison reasonable suspicion to detain Clarke. The ensuing pat-down was a proper precautionary act under Terry v. Ohio, 392 U.S. 1 (1968). The further search of Clarke, which led to the discovery of the cocaine in the shoes he was wearing, was proper as a search incident to arrest. Hardison clearly had probable cause at that point to arrest Clarke. See United States v. Aguiar, 825 F.2d 39 (4th Cir.), cert. denied, 484 U.S. 987 (1987).
 
 
 21
 We turn now to the appeals of Israel Pink and Sandra Rodney, who object to the introduction at trial of evidence of certain prior bad acts. Rule 404(b), Fed.R.Evid., provides:
 
 
 22
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....
 
 
 23
 The Rule has been termed an inclusive rule which admits all evidence of other crimes [or acts] relevant to an issue in a trial except that which tends to prove only criminal disposition. United States v. Masters, 622 F.2d 83, 85 (4th Cir.1980) (citations omitted); see also United States v. Watford, 894 F.2d 665, 671 (4th Cir.1990).
 
 
 24
 For evidence of prior convictions to be admissible under Rule 404(b), the evidence must be (1) relevant to an issue other than character;[3] (2) necessary;[4] and (3) reliable. United States v. Rawle, 845 F.2d 1244, 1247 (4th Cir.1988). Further, if the evidence is admissible under Rule 404(b), it must also be more probative than prejudicial. Id.; United States v. King, 768 F.2d 586, 588 (4th Cir.1985). This requires a determination that "the risk that the jury will be excited to irrational behavior is disproportionate to the probative value of the evidence." United States v. Tedder, 801 F.2d 1437, 1444 (4th Cir.1986), cert. denied, 480 U.S. 938 (1987). A finding that probative value outweighed prejudice would render the evidence admissible under Fed.R.Evid. 403. This Court reviews the admission of evidence pursuant to Rule 404(b) under the abuse of discretion standard. United States v. Greenwood, 796 F.2d 49, 53 (4th Cir.1986).
 
 
 25
 The prior bad act evidence introduced against Pink was her 1990 state conviction for crack cocaine distribution. The district court determined that "the proffered evidence would be relevant to the intent and the plan ... to go and pick this person [Clarke] up in the face of being concerned that it was a setup." The court gave the government a choice between introducing evidence of the conviction and introducing cumulative testimony by a law enforcement agent who had observed Pink engaged in prior drug deals. The government elected to introduce the conviction. Additionally, the court gave a limited instruction as to this particular evidence.
 
 
 26
 Pink argues that, but for the introduction of her prior conviction, she would not have been convicted. Contrary to her assertion, the evidence against Pink was strong.
 
 
 27
 Following Clarke's agreement to participate in the controlled delivery of the cocaine, law enforcement agents contacted government informant Lewis, who testified that after she told Pink that Clarke's car had broken down, Pink "took off." Pink called Clarke at Dulles three times. During those conversations, she attempted to confirm Clarke's identity. Pink solicited Sandra Rodney's aid in ascertaining that it indeed was Clarke to whom she was speaking. The substance of the conversation between Clarke and Pink was that he had the cocaine and that he needed a ride from Dulles. Lewis testified that she saw Pink after Pink's arrest and that Pink asked Lewis, who used an alias, if she was Cathy Lewis. Lewis said that she was not. Pink then informed Lewis that whenever they found out who had set them up, that person would be killed.
 
 
 28
 In the face of this evidence, and in light of the limiting instruction and the court's refusal to let a witness testify cumulatively as to Pink's drug dealings, the admission of Pink's prior conviction was not an abuse of discretion. See United States v. Rhodes, 779 F.2d 1019, 1031 (4th Cir.1985), cert. denied, 476 U.S. 1182 (1986).
 
 
 29
 Rodney maintains that Lewis' testimony that she had seen Rodney distribute cocaine in Winchester labor camps on a number of occasions was inadmissible. It was, as the court found, admissible on the issue of her intent when she and her husband drove to Dulles after the conversation with Clarke. See United States v. Gallo, 782 F.2d 1191, 1193 (4th Cir.1986), cert. denied, 490 U.S. 1070 (1989); United States v. Rawle, 845 F.2d at 1247.
 
 
 30
 Rodney also contends that denial of her motion for severance was an abuse of discretion. At the hearing on the motion, Rodney expressed concern that admission of Clarke's confession to agents at the time of his arrest would be prejudicial to her. Clarke told agents that he was carrying narcotics for delivery to "Rodigan" and "Israel," who were in Winchester. "Rodigan" was Calvin Rodney; Clarke did not mention Sandra Rodney to Hardison. However, she feared that admission of Clarke's confession would violate her right of confrontation under Bruton v. United States, 391 U.S. 123 (1968).
 
 
 31
 The government assured the court that it would redact Clarke's confession to conform to Bruton and to Richardson v. Marsh, 481 U.S. 200 (1987). Based upon this assurance, the district court denied the motion for severance, finding no reason to deviate from the general rule that persons indicted together should be tried together.
 
 
 32
 The denial of a severance motion will be overturned if there was an abuse of discretion. United States v. Chorman, 910 F.2d 102, 114 (4th Cir.1990). Such an abuse occurs only if the defendant was deprived of a fair trial and there was a miscarriage of justice. Id.
 
 
 33
 Clarke's confession did not name Sandra Rodney; rather, only "Rodigan" and "Israel" were named. Rodney's attorney pointed this out during his cross-examination of Hardison. Further, counsel elicited from Hardison Rodney's assertion to agents that the cocaine belonged not to her, but to other individuals. It is, therefore, difficult to see how she was prejudiced by the joint trial in which Clarke's redacted confession was admitted.
 
 
 34
 Finding no error in the arguments raised in this appeal, we affirm the convictions.
 
 
 35
 AFFIRMED.
 
 
 
 [1]
 Hardison was questioned about this reply at the suppression hearing. He acknowledged that the response was peculiar. But, Hardison added that despite this "very shaky yes," Clarke appeared willing to talk: "[H]e was very willing to stand there and speak with me. He put his bag down." Clarke never stated that he did not wish to answer questions
 
 
 [2]
 The powder later was determined to be a common cocaine adulterant
 
 
 [3]
 For evidence to be relevant, it must be sufficiently relevant to the charged offense. United States v. Greenwood, 796 F.2d 49, 53 (4th Cir.1986). See United States v. Shackleford, 738 F.2d 776, 779 (7th Cir.1984)
 
 
 [4]
 Evidence is considered necessary and admissible where it is an essential part of the crimes at trial, see United States v. Masters, 622 F.2d 83, 86 (4th Cir.1980), where it "furnishes part of the context of the crime," United States v. Smith, 446 F.2d 200, 204 (4th Cir.1971), or where it is necessary to a "full presentation" of the case, United States v. Weems, 398 F.2d 274, 275 (4th Cir.1968), cert. denied, 393 U.S. 1099 (1969)