**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**James A. RAWLE, Jr.,**
**Defendant–Appellant.**

**No. 87–5545.**

United States Court of Appeals,
Fourth Circuit.

Argued March 7, 1988.

Decided May 3, 1988.

Rehearing and Rehearing En Banc
Denied May 24, 1988.

Constance L. Rudnick (Gargiulo & Associates, Boston, Mass., on brief), for defendant-appellant.

John Robert Haley, Asst. U.S. Atty., Charleston, S.C. (Vinton D. Lide, U.S. Atty., Columbia, S.C. on brief), for plaintiff-appellee.

Before WIDENER, MURNAGHAN and WILKINSON, Circuit Judges.

MURNAGHAN, Circuit Judge:

On October 8, 1986, James Rawle, the defendant, was charged in a five-count indictment: 1) conspiracy to import marijuana; 2) conspiracy to possess marijuana with intent to deliver; 3) importation; 4) possession; and 5) violation of the Travel Act, 18 U.S.C. § 1952. The government dismissed Counts One and Three.

At trial, over objections by the defense counsel, the government introduced testimony of two self-professed former drug dealers, John Ward and John Bedekovic. Both Ward and Bedekovic testified as to the defendant's prior bad acts as a transporter of drugs. The defendant argued that the testimony should have been excluded under Fed.R.Evid. 404(b) because it was being brought in for the purposes of portraying the defendant as an individual prone to commit the crimes charged. He also argued that even if the evidence is admissible under Rule 404(b), it should have been excluded because its probative value was outweighed by the prejudicial effect. He moved for a severance of the counts.

The United States District Court for the District of South Carolina ruled that the evidence was admissible with regard to all three of the remaining counts (Counts Two, Four, and Five). Off the record, the district judge offered to give a charge concerning the effect of "prior bad act evidence" at the time that the evidence was introduced. That request was declined by the defense counsel on the basis that he

would later propose a stronger instruction than the one proposed by the court.

After a concession by the prosecutor following the charge conference, the district judge decided to exclude the evidence as to the conspiracy and possession counts. The defense counsel moved for a mistrial and/or severance of the counts. The district court denied both motions. The district judge did instruct the jury to disregard the "prior bad act evidence" with regard to Counts Two and Four.

On January 21, 1987, the defendant was convicted on all three counts.

## I.

On November 11, 1983, three tractors with trailers arrived in Charleston, South Carolina at prearranged motels. The defendant owned two of the tractors and had picked up one of the trailers when it was purchased.[1] Undercover Drug Enforcement Agents picked up the trailers, loaded them with marijuana, sealed the trailers with the same type of seals used in interstate commerce by the United States Customs Service, and returned the trailers to the motels where the drivers were staying. On November 13, 1983, the three tractor trailers, after having been loaded with marijuana and paper products in the rear of the trailer, were driven by the defendant's father, brother, and brother-in-law, who had spent the previous evening at the prearranged Charleston motels. They drove the tractor trailers from Charleston, South Carolina to Philadelphia, Pennsylvania and Middletown, New York. False bills of lading were utilized. The trailers were stopped and the drivers were arrested.

Most of the evidence against the defendant came from the testimony of Ward and Bedekovic. Ward admitted that his testimony and cooperation were motivated by a desire to reduce his twelve-year sentence from a federal district court in Pennsylva-

nia. Bedekovic is also incarcerated pursuant to a federal drug conviction.

Both Ward and Bedekovic testified that in 1975, the defendant drove empty cars back to Texas which had been used to transport marijuana for Ward. They stated that Rawle received money or marijuana as payment for the services. They also testified that in 1977–78 the defendant drove the tractor trailers loaded with marijuana for them from New Orleans, Louisiana, to Pennsylvania. They acknowledged that the defendant was involved in transporting five to seven loads in the years 1978–79. Ward and Bedekovic testified that Rawle eventually relinquished those duties to his family while he concentrated on organizing the transportation of the marijuana.

Ward testified that the only contact he had with Rawle during the years 1981–83 was when he bought some "exotic" marijuana from Rawle. Ward also testified as to what Rawle had told him about the "Northern Light" deal.[2] According to Ward, Rawle had said that his father, brother, and brother-in-law had been arrested and the trip had been "bad from the go" as the boat had been brought in by federal agents. Rawle allegedly told him that he and two others had been "riding up and down Route 95" looking for the trucks, which had been delayed because of the arrests. Rawle apparently had gone to Atlantic City to establish an alibi for his whereabouts that night, had received a phone call, and had driven the hour-plus to the Sheraton, and then went driving up and down Route 95 looking for the drugs. Ward testified that he had not participated in the "Northern Light" deal, but did expect to get some marijuana when it came in.

## II.

■ Fed.R.Evid. 404(b) provides that "[e]vidence of other crimes, wrongs, or acts

---

1. The three trailers used in this venture had been purchased in November, 1983 in cash by Paulson Trucking. All three titles to the trailers bore the signature of "Jim Rawle." The defendant also had in his home the receipts for the trailers signed by Ralph Paulson as well as the

receipts for two of the tractors used in this venture.

2. The marijuana had been brought into Charleston by law enforcement officers on a ship called the "Northern Light."

is not admissible to prove the character of a person in order to show that he acted in conformity therewith." To fall within the scope of Rule 404(b), an act need not be criminal, so long as it tends to impugn a defendant's character. *See, United States v. Terebecki,* 692 F.2d 1345, 1348 n. 2 (11th Cir.1982). Under Rule 404(b), however, prior bad acts are admissible if they are (1) relevant to an issue other than character,[3] (2) necessary,[4] and (3) reliable. *United States v. Greenwood,* 796 F.2d 49, 53 (4th Cir.1986); *United States v. Echeverri–Jaramillo,* 777 F.2d 933, 936 (4th Cir.1985), *cert. denied,* 475 U.S. 1031, 106 S.Ct. 1237, 89 L.Ed.2d 345 (1986); *United States v. Hadaway,* 681 F.2d 214, 217 (4th Cir.1982). The prosecution may introduce evidence of prior bad acts to show "proof of motive, opportunity, intent, or absence of mistake or accident." Rule 404(b). This list, however, is not exhaustive. *United States v. Stockton,* 788 F.2d 210, 219 n. 15 (4th Cir. 1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 147, 93 L.Ed.2d 89 (1986).

Even if the evidence is admissible under Rule 404(b), its probative value must be weighed against the danger of undue prejudice aroused by the evidence. *United States v. King,* 768 F.2d 586, 588 (4th Cir. 1985); *United States v. Johnson,* 634 F.2d 735, 737 (4th Cir.1980), *cert. denied,* 451 U.S. 907, 101 S.Ct. 1974, 68 L.Ed.2d 295 (1981). The district court's decision to admit evidence pursuant to Rule 404(b) is within its discretion and such decision will not be disturbed unless it was arbitrary or irrational. *Greenwood,* 796 F.2d at 53.

The defendant first argues that the case should be remanded because the district court failed to state on the record the reasons for admitting the Rule 404(b) evidence. He cites *United States v. Kendall,* 766 F.2d 1426 (10th Cir.1985), *cert. denied,* 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 889 (1986) to support his proposition. In *Kendall,* the Tenth Circuit held that, in order to

admit evidence under Rule 404(b), the trial court must specifically identify the purpose for which such evidence is offered and a broad statement merely invoking or restating the rule will not suffice. *Id.* at 1436. The court explained that "[a] specific articulation of the relevant purpose and specific inferences to be drawn from each proffer of evidence of other acts will enable the trial court to more accurately make an informed decision and weigh the probative value of such evidence against the risks of prejudice specified in Rule 403." *Id.* at 1436–37.

■ In contrast, at least two circuits have held that on-the-record determination of the probative value of the proffered evidence is not necessary. *United States v. Braithwaite,* 709 F.2d 1450, 1455–56 (11th Cir.1983) (on-the-record finding need not be made if the evidence proffered under Rule 404(b) was not of a conviction but of an arrest); *United States v. Gilmore,* 730 F.2d 550, 554 (8th Cir.1984) (although explicit ruling on admissibility of evidence of prior wrong acts is preferable, ruling of admissibility based on off-the-record bench discussion carries with it implicit ruling that standards of admissibility have been met). While an explicit ruling may be preferable and may indeed aid this Court in reviewing the record, we find the Eighth and Eleventh Circuits' decisions to be more persuasive than that of the Tenth Circuit. Therefore, the trial court's failure specifically to identify the purpose for which the evidence is offered and admitted was not reversible error.

■ On the merits, we believe that the evidence was properly introduced to show knowledge, common scheme or plan. Both Bedekovic and Ward testified that Rawle used to drive tractors laden with marijuana but eventually relinquished those duties to his family while he organized the transportation of the marijuana. Bedekovic testi-

---

**3.** In order for evidence to be relevant, it must be sufficiently related to the charged offense. *See United States v. Shackleford,* 738 F.2d 776, 779 (7th Cir.1984).

**4.** The evidence is necessary and admissible where it is an essential part of the crimes on trial, *see United States v. Masters,* 622 F.2d 83, 86 (4th Cir.1980), or where it "furnishes part of the context of the crime." *United States v. Smith,* 446 F.2d 200, 204 (4th Cir.1971).

fied that trailers would be loaded by others while the drivers would concoct "alibis." Paper products were often placed in the back and false bills of lading were used. Therefore, there was sufficient similarity between these prior bad acts and the alleged acts of the defendant in the case at bar. In addition, the "prior bad acts" testimony was admissible and relevant for the purposes of showing a business enterprise, i.e., a continuous course of conduct, an essential element of the Travel Act. *See United States v. Gallo*, 782 F.2d 1191, 1194–95 (4th Cir.1986) ("the term 'business enterprise' means a continuous course of conduct, rather than a sporadic, casual, individual or isolated violation").

■ The defendant also challenges the testimony of Ward and Bedekovic regarding the financial gains of the defendant. Ward testified that in 1985 the defendant had accumulated one million dollars in cash from his marijuana deals. Ward also testified that the defendant had purchased two boats, snow mobiles, a Corvette and his household furnishings. Ward stated that the defendant had rented a beach house for $700.00 to $1,000.00 per week and homes for the skiing season. Bedekovic testified that one of the boats was purchased at a cost of $18,000.00.

It is well established that such testimony can be introduced for the purposes of showing ill gotten gains. *See United States v. Mitchell*, 733 F.2d 327, 331 (4th Cir.1984), *cert. denied*, 469 U.S. 1039, 105 S.Ct. 520, 83 L.Ed.2d 409 (1984). Moreover, the testimony was relevant to the issue of business enterprise because, while the enterprise need not be profitable, such evidence tends to indicate a source of funds spanning a significant period of time.

■ The defendant also argues that Ward and Bedekovic's testimony was not only unreliable but also too prejudicial. While it is true that both Ward and Bedekovic may have had incentives to cooperate with the government, the district judge did

not err or abuse his discretion in finding their testimony to be sufficiently reliable. With regard to the defendant's prejudicial claim, though we agree that the evidence was prejudicial, it did not outweigh its probative value. Moreover, the prejudicial effect of the testimony could have been adequately limited if the district judge had given, as he had intended to prior to a waiver by the defense counsel, a limiting instruction at the time that the testimony was introduced. *See United States v. Masters*, 622 F.2d 83, 87–88 (4th Cir.1980). Judge Blatt did give a cautionary instruction to the jury at the close of the evidence. In sum, the district court did not abuse its discretion in admitting the evidence of the defendant's prior bad acts.

### III.

18 U.S.C. § 1952 provides in pertinent part that:

> (a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—
>
> > (1) distribute the proceeds of any unlawful activity; or
> >
> > (2) commit any crime of violence to further any unlawful activity; or
> >
> > (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,
>
> and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

■ The defendant argues that the government failed to prove 1) that there was a continuous course of conduct[5] and 2) that the defendant had taken any action subsequent to the interstate travel.

■ Though the evidence introduced by the government to prove a continuous

---

5. It is not disputed that, under 18 U.S.C. § 1952, the government must prove, beyond a reasonable doubt that the business enterprise was more than a sporadic, isolated event. There

must be proof that it was a "continuous" course of conduct. *United States v. Gallo*, 782 F.2d 1191, 1194–95 (4th Cir.1986).

course of conduct was, at best, weak, it was sufficient for the jury to find that the defendant was part of a business enterprise. Moreover, the government did introduce evidence of the actions taken by the defendant after the interstate travel of William J. Rawle and James A. Rawle. The defendant had performed an act to promote, manage, establish, carry on and facilitate the loading of the trucks with marijuana and facilitating the drive back from South Carolina. Therefore, the government did present sufficient evidence.

## IV.

Without citing any authority directly applicable, the defendant argues that the indictment charging the Travel Act violation failed to specify what evidence was presented to the grand jury for consideration on the issue of "business enterprise." He contends, therefore, that the prior bad acts should not have been introduced because the grand jury may not have passed upon such evidence.

In the instant case, the indictment alleged that the defendant violated the Travel Act by engaging in a business enterprise involving marijuana, and thereafter, performed or caused to be performed an act to facilitate the promotion of said unlawful activity, to wit, providing the means for James Rawle and William Rawle to transport 37,000 pounds of marijuana.[6]

■ It is well established that an indictment under the Travel Act, 18 U.S.C. § 1952, is ordinarily sufficient if it charges in appropriate terms and substantially in the words of the statute. 1 ALR Fed. 838, § 15; *see United States v. Lookretis,* 422 F.2d 647, 651 (7th Cir.1970), *cert. denied,* 398 U.S. 904, 90 S.Ct. 1693, 26 L.Ed.2d 63 (1970); *Turf Center, Inc. v. United States,* 325 F.2d 793 (9th Cir.1963); *see also United States v. American Waste Fibers Co.,* 809 F.2d 1044, 1046–47 (4th Cir.1987) (an indictment that merely tracks the statutory language is ordinarily valid). Clearly the defendant was informed of the essential facts charged. Therefore, the indictment was not defective.

■ Moreover, the defendant had failed to move for a bill of particulars. A defendant who fails to move for a bill of particulars is precluded from raising the issue that the indictment failed to charge an offense with sufficient particularity, where the indictment sets out in general language all the essential elements of the offense charged. *Flying Eagle Publications, Inc. v. United States,* 273 F.2d 799, 802 (1st Cir.1960); *see American Waste Fibers Co.,* 809 F.2d at 1047. Therefore, the defendant's argument that certain extrinsic evidence should not have been admitted because the indictment was not sufficiently particular cannot be raised here.

AFFIRMED.

---

**6.** The exact words of the indictment state as follows:

COUNT 5

THE GRAND JURY FURTHER CHARGES:

That commencing during on or about the month of November 1983, in the District of South Carolina and elsewhere, the defendant, JAMES ANTHONY RAWLE, did willfully and knowingly aid, abet, induce and procure William J. Rawle and James A. Rawle, Jr., to knowingly and willfully travel from the State of Pennsylvania to Charleston, South Carolina, with intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of an unlawful activity, that is, a business enterprise involving marijuana, a Schedule I Controlled Substance, and thereafter to perform, attempt to perform and cause to be performed an act to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of such unlawful activity, to wit: thereafter the said William J. Rawle and James A. Rawle, Jr., did each drive a tractor-trailer truck to Charleston, South Carolina, and after said vehicle was loaded with approximately 37,-000 pounds of marijuana, did drive from Charleston, South Carolina, to Philadelphia, Pennsylvania, the said JAMES ANTHONY RAWLE having provided the means of transportation for said travel,

All in violation of Title 18, United States Code, Sections 1952(a)(3) and 2.