974 F.2d 1333
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of AMERICA, Plaintiff-Appellee,
v.
James L. MOORE, Defendant-Appellant.
 No. 91-1772.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 6, 1992
Decided: August 31, 1992
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Senior District Judge. (CA-90-1320-A)
 ARGUED: Jonathan Cooper Thacher, Thacher, Swiger & Cay, Fairfax, Virginia, for Appellant.
 Mark Douglas Polston, Civil Division, United States Department of Justice, Washington, D.C., for Appellee.
 ON BRIEF: Stuart M. Gerson, Assistant Attorney General, Michael F. Hertz, Stephen D. Altman, Civil Division, United States Department of Justice, Washington, D.C.; Kenneth Melson, United States Attorney, Richard Parker, Office of the United States Attorney, Alexandria, Virginia, for Appellee.
 E.D.Va.
 Affirmed in part, vacated in part, and remanded.
 Before PHILLIPS and MURNAGHAN, Circuit Judges, and RAMSEY, Senior United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 James L. Moore appeals a district court judgment holding him civilly liable under two federal conflict of interest statutes, 18 U.S.C. §§ 208 and 209, and ordering him to pay damages to the government in the amount of $311,862. Finding no fault with the rulings below on liability, we affirm the district court's ruling that Moore violated §§ 208 and 209. However, because we believe Moore was unfairly prejudiced by the district court's admission into evidence of Moore's corporate tax returns, we vacate the damage award and remand for a new trial on damages.
 
 I.
 
 2
 In 1982 Moore helped incorporate Electro Mech of Virginia (EMV), a subchapter "S" corporation that manufactured circuit breakers, electrical contacts, and related components. Moore owned 49% of EMV, and his colleague, Bruce Tingle, owned 51%.
 
 
 3
 From January of 1983 through September of 1986, Moore worked as an assistant engineer in the United States Naval Sea Systems Command (NAVSEA). Evidence presented at trial indicated that while working at NAVSEA, Moore helped to secure inside information and government contracts for EMV. EMV's business was almost exclusively with the government. Moore never revealed to NAVSEA his interest in EMV, and, during his period of employment with NAVSEA, he received dividend income from EMV.
 
 
 4
 In 1987 Moore pled guilty to a criminal information charging him with violating 18 U.S.C. § 209(a) by accepting income from EMV while working for the government. Section 209(a) provides:
 
 
 5
 Whoever receives any salary, or any contribution to or supplementation of salary, as compensation for his services as an officer or employee of the executive branch of the United States Government ... from any source other than the Government of the United States ... [s]hall be subject to the penalties set forth in section 216 of this title.
 
 
 6
 The criminal information provided that Moore received $100,000 in dividends from EMV during his period of employment with NAVSEA. As a penalty for this violation, Moore was fined $1,200.
 
 
 7
 In 1990, the Government brought a two-count civil complaint, alleging that Moore breached his fiduciary duty to the government by accepting funds from EMV. The government alleged that Moore received approximately $100,000 in dividends from EMV between 1983 and 1985. (J.A. 7). The government sought judgment against Moore for "the total amount of dividends received from EMV during the period January 1, 1983 through September 13, 1986 plus interest." (J.A. 11).
 
 
 8
 Count I alleged that Moore breached his fiduciary duty of loyalty under § 209(a) by accepting a supplement to his federal salary as compensation for services to the government. Count II alleged that Moore breached his fiduciary duty of loyalty in violation of § 208(a), a federal conflict of interest statute prohibiting federal employees from personally and substantially involving themselves in matters in which they have a financial interest.[1]
 
 
 9
 Moore filed a motion to dismiss the complaint, and the government filed a cross-motion for partial summary judgment on liability and damages under Count I. In the memorandum accompanying its crossmotion, the government requested damages of $100,000, the amount the government said Moore received from EMV. The district court denied Moore's motion to dismiss and granted summary judgment for the government on liability under Count 1, finding that, as a result of his plea in the criminal action, Moore was estopped from denying liability under § 209(a). However, the court denied the government's motion for summary judgment on damages, holding that Moore was not estopped from disputing the portion of proceeds he received as compensation for his government service. The case went to trial on damages under Count I and liability and damages under Count II. In its memorandum and order on the pre-trial motions, the district court outlined the applicable burdens of proof for trial:
 
 
 10
 [T]he government, at trial, bears the burden of establishing a prima facie case as to an amount it contends defendant received in violation of 18 U.S.C. § 209. Once the government establishes a prima facie case as to an amount, the burden of going forward shifts to defendant to produce evidence rebutting this amount or establishing deductions from it. But the ultimate burden of persuasion by a preponderance of the evidence remains on the government.
 
 
 11
 (J.A. 244).
 
 
 12
 On at least two occasions during pre-trial discovery, the government asked Moore to produce EMV's corporate tax returns for 1982 through 1988. For reasons not clear from the record, Moore failed to do so. On June 24, 1991-21 days before trial-the government petitioned the court, pursuant to Fed. R. Crim. P. 6(e)(3), for access to material gathered by the grand jury that originally investigated Moore. The government requested access to Moore's corporate and individual tax returns. In its memorandum in opposition to the government's petition, Moore argued that the"eleventh hour" request, filed after the deadline for discovery, would unfairly prejudice Moore.
 
 
 13
 On July 8, 1991, the district court ordered disclosure of the documents. The government received the grand jury material at 5:00 pm, on Thursday, July 11, 1991. Moore did not receive the documents until Friday, July 12, two days before trial began on Monday, July 15.
 
 
 14
 Over Moore's objection, on the morning of trial, the court admitted into evidence EMV's corporate tax returns for the years at issue and a letter from Moore's counsel to the Assistant United States Attorney detailing the amount of money Moore received from EMV in 1986. The court admitted the evidence in contravention of an earlier order requiring all pre-trial exhibits to be filed by May 22, 1991. At trial, the government relied exclusively on EMV's corporate tax returns and the letter from Moore's counsel to show that, in the course of his employment with NAVSEA, Moore received $311,862 from EMV.
 
 
 15
 With respect to Count II, the district court found Moore violated § 208 by participating personally and substantially as a government employee in contract negotiations in which he had a financial interest. The court held that, while the burden was on the government to prove by a preponderance of evidence that Moore received outside funds as a result of his prohibited conduct, the statute imported common law notions of fiduciary obligation for determining liability and damages. Therefore, if the government could show an employee had a conflict of interest and received certain sums therefrom, the burden shifts to the defendant to show the amount was not all related to the prohibited conduct. The court stated:
 
 
 16
 [F]rankly, the defendant has not done that. .... his assertion that he did not receive monies that his own corporation's K1 shows he did, are just not enough to negate the firm figure that the government has come up with. And I need look no further than the K-1's ... to show what amounts were received by this defendant."
 
 
 17
 (J.A. 631).[2] The court noted that"if anybody knew where that money went, and what the source of it was, this taxpayer ought to." (J.A. 631-32).
 
 
 18
 The court held that "ordinary fiduciary principles require that [Moore] come forward now with figures showing that that is an incorrect amount. He has not done this." (J.A. 632). The court awarded the government judgment for $311,862, the amount the government claimed Moore received in income from EMV from January of 1983 to September of 1986. The government arrived at this figure from EMV's tax records and the letter from EMV's counsel.
 
 
 19
 With respect to damages under Count I, § 209(a), the court noted that it was "not as satisfied that [$311,862] has been shown unambiguously to have been the amount he received with the intent to supplement his income." (J.A. 632). But, the court found, "I don't have any figure reducing that." (J.A. 633). The court reiterated its concern with Moore's failure to document a lower figure and awarded the government the $311,862 damage award under both counts.
 
 
 20
 Moore filed a motion to amend the judgment, arguing that the admission of the tax records at such a late date was prejudicial. Along with his motion, Moore filed an affidavit from a Certified Public Accountant, claiming that the government erred in calculating Moore's income from EMV. The court denied Moore's motion, and this appeal followed.
 
 
 21
 In his appeal, Moore challenges the district court's tardy admission of EMV's corporate tax returns, the court's assignment of the burdens of proof, the court's assessment of damages, and the court's damage award in light of the double jeopardy constraint. Moore does not appeal the court's holding that he violated # 8E8E # 208 and 209. Accordingly, we do not disturb the rulings on liability. However, because we believe the district court erred in admitting the tax records without giving Moore sufficient time to review the records and marshal defenses on the question of damages, we vacate the damage award and remand for a new trial on damages now that Moore has had time to evaluate the records on which the government bases its damage assessment. Because the district court will revisit the issue of damages on remand and because each of Moore's other assignments of error relates to damages, we give only brief consideration of Moore's other challenges.
 
 II.
 
 22
 We review the district court's decision to admit the records in question for an abuse of discretion. United States v. Rawle, 845 F.2d 1244, 1247 (4th Cir. 1988). The records at issue are the tax returns for EMV, Moore's shareholder returns, and a letter from Moore's counsel regarding Moore's compensation from EMV in 1986. The district court's decision to admit these documents on the morning of trial should not be overturned unless the defendant was prejudiced. Jund v. Hempstead, 941 F.2d 1271, 1287 (2d Cir. 1991). Under the circumstances, we believe Moore was unfairly prejudiced by the admission of these documents.
 
 
 23
 First, the government's complaint and its motion for partial summary judgment indicated that the government would limit its prayer for damages to $100,000. In its memorandum and order denying the government's motion for summary judgment on § 209 damages, the court stated "a disputed issue of fact exists concerning how much of the $100,000 served as a supplement to his federal salary." (J.A. 295). While the government points to language in the complaint indicating it would seek all of the proceeds Moore received, Moore reasonably believed on the morning of trial that the damage ceiling would be $100,000. Contrary to earlier assertions, the government, relying completely on the corporate tax returns Moore received the Friday before the Monday trial, requested $311,862 in damages. While we do not believe the government or the lower court was required to limit the damage award to $100,000, we believe Moore's reasonable reliance on this lower figure resulted in unfair prejudice when the government requested a higher figure and defended its request with evidence Moore had only two days to review.
 
 
 24
 Second, regardless of Moore's possible reliance on the $100,000 figure, the fact that Moore had only two weekend days to review the documents on which the government based its damage assessment constituted unfair prejudice to his case. We accept his contention that this was insufficient time to secure an expert witness who could interpret the tax returns at trial. And we also accept the statement of Moore's counsel, who was not a tax attorney, that under the circumstances, despite his best effort, he was unprepared to defend against the government's assessment of the returns.
 
 
 25
 Third, the district court, having shifted the burden of going forward to Moore, attached significant weight to Moore's inability to show "that he did not receive monies that his own corporation's K-1 shows he did." (J.A. 631). The court, unsatisfied that the government had shown that EMV paid Moore $311,862 as compensation for his government employment, seemed constrained to award the government's figure because the court did not "have any figure reducing that." (J.A. 633).
 
 
 26
 We find clear prejudice from the fact that Moore was afforded insufficient time to review tax records which two days later constituted the entirety of the government's prima facie case on damages. While the government argues that Moore should have been aware that the tax records would be used as the measure of damages and taken steps to obtain these records from the IRS, we are not prepared to conclude that Moore was remiss in failing to take those steps. We believe that fairness requires us to assume instead that Moore reasonably believed that $100,000 would be the ceiling of the government's damage request. Such a belief, which reasonably could have originated when the earlier plea agreement incorporated that figure, was later confirmed by the court's pre-trial orders and related colloquy with counsel. All in all, these were reasonably calculated to lead Moore to believe that the only issue for trial was how much of the $100,000 he received in violation of §§ 208 and 209. To have the government in effect triple its official damage requests just a weekend before trial raises too serious questions of unfair prejudice to stand uncorrected. The damage award is therefore vacated and the cause is remanded for a new trial on damages now that Moore has had sufficient time to review the critical documents and prepare his defense.
 
 III.
 
 27
 We consider briefly Moore's other challenges to the extent they affect the district court's approach to the damage question on remand.
 
 A.
 
 28
 Moore claims the district court erred by shifting the burden to him to disprove the government's damage request when the government failed to meet its burden of establishing a prima facie case that certain monies were paid to Moore either in compensation for services as a government employee under § 209(a) or in relation to prohibited conduct under § 208. We find no fault with the district court's assignment of burdens. While the government has the ultimate burden of proving Moore received funds in violation of §§ 208 and 209, the government made a prima facie case by contending that Moore received a specific amount of income from EMV while working for NAVSEA. That showing was sufficient to shift the burden to Moore to come forward with evidence that not all the income he received from EMV was accepted in violation of the conflict of interest statutes.
 
 B.
 
 29
 Moore claims the government misinterpreted the tax records and overstated his income from NAVSEA.[3] Because Moore received the tax records two days prior to trial, questions involving interpretation of the records were not fully considered in the proceedings below. On remand, we expect the adversary process will produce a much more complete evaluation of the corporate tax records at issue. Accordingly, we reject at this stage Moore's challenges to the interpretation of the returns below.
 
 C.
 
 30
 Moore argues that the district court's damage award is so disproportionate to the harm done to the government that it constitutes a double jeopardy violation under United States v. Halper, 490 U.S. 435 (1989). The Supreme Court established the following limitation on civil awards in Halper:
 
 
 31
 [U]nder the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution."
 
 
 32
 Id. at 1902. Since we are vacating the damage award below due to the prejudicial admission of evidence, we may not review the double jeopardy implications of the vacated award. However, we agree with the district court (J.A. 293-94) that ordering Moore to pay the government the amount he received from EMV as compensation for activities which violated §§ 208 and 209 is a remedial response. We do not believe the district court would be punishing Moore a second time by forcing him to forfeit his illicit gain.
 
 IV.
 
 33
 For the foregoing reasons, we affirm the district court's ruling that Moore violated §§ 208 and 209. We vacate the district court's damage award and remand for a new trial on the damages issue in accordance with this opinion.
 
 
 34
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED
 
 
 
 [1]
 18 U.S.C. § 208(a) provides:
 [W]hoever, being an officer or employee of the executive branch of the United States Government ... participates personally and substantially as a Government officer or employee, through decision, approval, disapproval, recommendation, the rendering of advice, investigation, or otherwise, in a ... particular matter in which, to his knowledge, he ... has a financial interest ... [s]hall be subject to 6350 35 7 the penalties set forth in section 216 of this title.
 
 
 [2]
 The K-1 form is the tax return filed by shareholders in subchapter S corporations
 
 
 [3]
 Moore maintains that the government and the district court erred in adding figures for "ordinary income" to those for "property distributions" on the corporate K-1 forms. He contends this resulted in an overstatement of the income he received from EMV during the relevant years