986 F.2d 1416
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Nathan Lee PILGRIM, Defendant-Appellant.
 No. 92-5301.
 United States Court of Appeals,
Fourth Circuit.
 Argued: December 4, 1992
Decided: February 22, 1993
 
 Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Robert D. Potter, District Judge. (CR-91-113-P)
 Joseph Franklin Lyles, Charlotte, North Carolina, for Appellant.
 Robert Jack Higdon, Jr., Assistant United States Attorney, Charlotte, North Carolina, for Appellee.
 Thomas J. Ashcraft, United States Attorney, Charlotte, North Carolina, for Appellee.
 W.D.N.C.
 AFFIRMED.
 Before WIDENER, HALL, and NIEMEYER, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 The defendant, Nathan Lee Pilgrim, was found guilty by a jury of one count of possession with the intent to manufacture and distribute marijuana, pursuant to 21 U.S.C. § 841(a)(1), one count of using a firearm during and in relation to a drug trafficking crime, pursuant to 18 U.S.C. § 924(c)(1), and two counts of possession of a firearm after having been convicted of a crime punishable by imprisonment for a term exceeding one year, pursuant to 18 U.S.C. § 922(g). Pilgrim appeals these convictions, assigning multiple errors to the conduct of his trial. Specifically, Pilgrim contends that the district court erred when it allowed the testimony of a Government informant concerning uncharged instances of drug possession and trafficking, that the district court gave confusing jury instructions, that the evidence was, as a matter of law, insufficient to convict him, and that the district court erred by admonishing defense counsel in the presence of the jury. We affirm.
 
 
 2
 Pilgrim was arrested as the result of an investigation and search warrant conducted and executed by the Gaston County North Carolina Police Department. The Government's evidence at Pilgrim's trial tended to show that, prior to and including the day of the execution of a search warrant on Pilgrim's home, Pilgrim was involved in the possession and distribution of large quantities of marijuana, including marijuana plants and processed marijuana. The Government chiefly relied on the testimony of a confidential informant, Brian Oliver, who was supervised by Detective Rohm of the Gaston County Police Department. Oliver, a long time friend of Pilgrim's, testified to facts regarding Pilgrim's drug activities during the investigation, as well as Pilgrim's drug activities on the day of the execution of the search warrant.
 
 
 3
 Oliver related at trial that he had often visited Pilgrim's home, and that on numerous occasions he had seen Pilgrim in possession of large quantities of marijuana, cash, and drug related paraphernalia. He described Pilgrim's participation in the cultivation and distribution of marijuana and also described having seen live marijuana plants growing in a bedroom of Pilgrims home under artificial lighting conditions. Oliver relayed this information over a period of weeks to Detective Rohm, who told Oliver to continue making his observations and that he and other officers would begin to observe Pilgrim's home.
 
 
 4
 Approximately two weeks before the execution of the search warrant Oliver advised Detective Rohm that he had observed approximately two pounds of marijuana in Pilgrim's residence. He also told Detective Rohm that Pilgrim had at least one firearm in his home and that Pilgrim had stated he would "spray down" the police if they attempted to enter his residence. Furthermore, Oliver again described the marijuana plants Pilgrim had growing in his back bedroom, but told Rohm that because these plants were approaching the time of transplanting it was Pilgrim's plan to move them outdoors.
 
 
 5
 Oliver also related his role in the activities occurring the day the search warrant was executed. Oliver stated that on March 28, 1991, he was sent into Pilgrim's house again in an undercover capacity. Upon his return from the house, and during efforts by police officers to arrest individuals coming from the house, Oliver told Rohm he had seen, by his own estimate, around ten (10) pounds of marijuana, a large quantity of cash, numerous marijuana transactions, and at least one firearm. While Oliver had seen large numbers of live marijuana plants in the rear bedroom on previous occasions, he told Rohm that during this visit to Pilgrim's home, the plants had been removed from that bedroom, leaving only empty planters and artificial lighting. Based on this information as well as that provided over the course of the previous weeks, Detective Rohm obtained a search warrant.
 
 
 6
 The police officers, led by Detective Rohm, entered the house on the evening of March 28, 1991 and, after securing the premises, began to search. The officers first located a Sturm Ruger Mini-14 gun, with a detached but fully loaded forty (40) round magazine in the front bedroom. This weapon matched the description of a firearm provided previously by Oliver. As the officers continued their search they found drug related items and other miscellaneous drug paraphernalia, as well as a .44 cal. Ruger carbine and ammunition.
 
 
 7
 The officers next searched the back bedroom where Oliver had previously seen live marijuana plants growing. While they found the artificial "grow lights" previously described to them by Oliver, the live plants were no longer in the house. Left behind, however, was some potting soil that had been spilled on the floor. The officers searched the back deck of Oliver's home, where they found brand new green buckets with the sticker from the store still affixed to them, as well as bags of fertilizer, Peter's plant food, and potting soil. After finding these items, they went into the back and side yard of Pilgrim's home and started searching the area. There they found identical green buckets, with stickers on the buckets from the same store as the buckets on Pilgrim's porch, and filled with growing marijuana plants.[1]
 
 
 8
 Pilgrim first argues that the district court erred when it allowed into trial the testimony of the Government's informant, Brian Oliver, because Oliver's testimony consisted of uncharged bad acts inadmissable under Federal Rule of Evidence 404(b). Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." The prosecution may introduce evidence of bad acts, however, to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Rule 404(b). The decision to admit Rule 404(b) evidence at trial is within the sound discretion of the district court, and such decision will not be disturbed unless it is arbitrary and irrational. United States v. Rawle, 845 F.2d 1244, 1247 (4th Cir. 1988).[2]
 
 
 9
 Pilgrim argues that the evidence of his prior marijuana dealings with processed marijuana, as testified to by Oliver and Detective Rohm, was inadmissible at trial because it went to his propensity to commit the crime. The prosecution argues that this testimony was necessary to prove the essential element of intent, as well as to show plan, knowledge, absence of mistake or accident, and preparation, e.g., anything but the character of Pilgrim. Pilgrim attempts to rebut the prosecution by arguing that this evidence was not necessary for the element of intent because possession of the plants, not intent, was the only issue in dispute at trial.[3]
 
 
 10
 Pilgrim is mistaken concerning the burden of proof required by the prosecution. Pilgrim was charged with the crime of possession with the intent to manufacture and distribute marijuana. The prosecution had the burden of proving all elements of that crime, including intent. Pilgrim's claim that the intent element was not an issue, because the multitude of plants found made it obvious that intent was present, misses the mark. Not only was the prosecution required to prove Pilgrim was in possession of the plants, but it was required to prove that Pilgrim himself had the intent to distribute the marijuana derived from those plants. This burden made it appropriate[4] for the prosecution to introduce the evidence of Pilgrim's prior dealings in marijuana to show that Pilgrim, not someone else, intended on distributing the marijuana. Because we are of opinion this evidence was necessary for the prosecution to prove the essential element of intent, we do not find the district court was arbitrary or irrational when it allowed that evidence into the trial. Of course, there was no abuse of discretion.
 
 
 11
 Next, Pilgrim argues for the first time on appeal that the district court's instructions to the jury relating to the charge of using a firearm during the commission of a drug crime under 18 U.S.C. § 924(c)(1) constituted plain error.
 
 
 12
 The indictment, in pertinent part, charges that"Pilgrim, during and in relation to a drug trafficking crime ... possession of marijuana plants with the intent to manufacture and distribute the same did ... unlawfully use and carry a firearm." The court's instruction was that there were "two essential elements which the Government must prove beyond a reasonable doubt in order for you to find the defendant guilty. First, the defendant committed the crime of possession with intent to distribute marijuana. Second, that during and in relation to the commission of those crimes or that crime the defendant knowingly used or carried a firearm."
 
 
 13
 We do not think there is sufficient variance between the indictment and the instruction to constitute reversible error, much less plain error.
 
 
 14
 In the same vein, the defendant complains of a part of the instructions which were to the effect that the "defendant committed the crime of possession with the intent to distribute marijuana." The defendant claims that the instructions should have said "marijuana plants" rather than marijuana. We are also of opinion this also was not reversible error, much less plain error.
 
 
 15
 Pilgrim next argues that the evidence, as a matter of law, was insufficient to convict him for intentionally possessing the recovered marijuana with the intent to distribute it. 21 U.S.C.s 841(a)(1). Specifically, Pilgrim argues that the evidence was insufficient for the jury to have found he actually or constructively possessed the fortyseven marijuana plants found by the officers. On direct appeal, we review the evidence at trial in the light most favorable to the Government. Glasser v. United States, 315 U.S. 60, 80 (1942).
 
 
 16
 Pilgrim only disputes the sufficiency of the evidence relating to the element of possession in 21 U.S.C. § 841(a)(1). The possession of controlled substances required for a violation under this section may be either constructive or actual. United States v. Zandi, 769 F.2d 229, 234 (4th Cir. 1985). Constructive possession exists when a defendant has the power to exercise dominion and control over an item, Zandi, 769 F.2d at 234, or dominion over the premises where an item is found. United States v. Blue, 957 F.2d 106, 107 (4th Cir. 1992).
 
 
 17
 The evidence at trial of Pilgrim's dominion and control over the forty-seven plants found in his yard was substantial. The Government's witness, Oliver, testified that weeks before the execution of the warrant Pilgrim had kept these plants in a back bedroom under "grow lights" and was readying them for transplanting. Later, Oliver told Detective Rohm that Pilgrim had moved all of the plants outside. As a result of the search warrant, potting soil and"grow lamps" were found in Pilgrim's back bedroom. On his back porch, the officers found more potting soil and plant food, as well as brand new buckets with the tags still affixed to them from the same store as those tags on the buckets which contained the plants. Searching the curtilage of Pilgrim's home, the officers found 47 marijuana plants, many of which had been planted in the same kind of new buckets, with the store tags from the same store affixed, as had been found on Pilgrim's porch. Finally, the evidence of drug paraphernalia from Pilgrim's home, including marijuana seeds and residue in a plastic bag, gave the jury ample evidence to have found that Pilgrim had dominion over the plants found and, accordingly, possessed them under the statute. About the only evidence favorable to Pilgrim in this respect was that more than two dwellings had access to the yard, but that fact was before the jury which decided the issue favorably to the Government.
 
 
 18
 Because there was sufficient evidence for the jury to have found Pilgrim in possession of the marijuana plants in question, we are of opinion this assignment of error is without merit.
 
 
 19
 Finally, Pilgrim argues that the district court's admonishment to defense counsel, in the presence of the jury, was reversible error. This is the colloquy that occurred when defense counsel showed up late at the first day of Pilgrim's trial:
 
 
 20
 The Court: Mr. Lyles, court starts at 9:30 not 9:40. Now, you have forty-five people sitting here waiting for your pleasure. Now if that ever happens again, you're going to be sanctioned, and sanctioned severely. Do you understand that, sir?
 
 
 21
 Mr. Lyles: Yes, Sir.
 
 
 22
 The Court: Now, I'll take this matter up with you later.
 
 
 23
 Pilgrim argues that this admonishment by the court was unduly exaggerated, setting a "prejudicial tone to the remainder of the proceedings." The question, however, is whether, considering the record as a whole, the district court's comments deprived Pilgrim of a fair trial. See United States v. Abrams, 568 F.2d 411, 423-25 & n.60 (5th Cir. 1978), cert. denied, 437 F.2d 903 (1978). A review of the record reveals that the district court's comment was isolated, that there was no other like complaint about the district court's actions by either counsel, and that there was no other claim respecting the district court's partiality. While we might agree that this type of admonishment of counsel is better made out of the presence of the jury, we do not find that this statement abridged Pilgrim's right to a fair trial.
 
 Pilgrim's convictions are accordingly
 
 24
 AFFIRMED.
 
 
 
 [1]
 Forty-seven plants were found in the yard surrounding Pilgrim's home
 
 
 [2]
 We have noted that for Rule 404(b) evidence to be admissible, it must be (1) relevant to an issue other than character, (2) necessary, and (3) reliable. Rawle, 845 F.2d at 1247
 
 
 [3]
 Pilgrim argues, with some originality, that because possession was the only real issue at trial and that the multitude of plants makes it obvious that the possessor of the plants, whoever that might have been, had the intent to distribute, there was no need for the prosecution to introduce evidence showing Pilgrim had the intent to distribute the marijuana product derived from these plants
 
 
 [4]
 Rule 404(b) evidence is necessary "where it is an essential part of the crimes on trial, or where it 'furnishes part of the context of the crime.' " Rawle, 845 F.2d at 1247 n.4 (citations omitted)