16 F.3d 414
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
James WILLIAMS, a/k/a James, a/k/a Old Man Jim, Defendant-Appellant.
 No. 93-5456.
 United States Court of Appeals, Fourth Circuit.
 Submitted Dec. 20, 1993.
Decided Jan. 20, 1994.
 
 Appeal from the United States District Court for the Northern District of West Virginia, at Wheeling.
 James T. Kratovil, Kratovil & Kratovil, Charles Town, W VA, for appellant.
 William D. Wilmoth, U.S. Atty., Thomas O. Mucklow, Asst. U.S. Atty., Wheeling, West VA, for appellee.
 N.D.W.Va.
 AFFIRMED.
 Before HALL and LUTTIG, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 James Williams appeals his conviction of conspiracy to possess with intent to distribute and to distribute crack cocaine, 21 U.S.C.A. Sec. 846 (West Supp.1993), and one count of aiding and abetting the distribution of crack cocaine, 21 U.S.C.A. Sec. 841 (West 1981 & Supp.1993), 18 U.S.C. Sec. 2 (1988). He alleges that the district court abused its discretion by allowing the government to introduce evidence of an uncharged crack distribution. He also appeals the 87-month sentence imposed on him on the grounds that his base offense level and criminal history category were improperly calculated. We affirm.
 
 
 2
 Williams worked as a groom at the racetrack in Charles Town, West Virginia, until his arrest. He was charged with conspiring to distribute crack with Freddie Lee Mathis between January 1990 and May 1992. Despite testimony from numerous witnesses, including Mathis, which established that Williams was a runner for Mathis at the racetrack, Williams testified that he had no involvement with drugs apart from a 1989 conviction for possession of crack.
 
 
 3
 The government was then permitted to introduce evidence from a deputy sheriff who had made an undercover buy of crack from Williams in March 1992, in Charles Town, as part of a still uncompleted investigation. The government represented to the court that it had only recently been contacted by the deputy, who had not known the identity of the man he bought the crack from, but recognized Williams' picture in a newspaper. The district court found that the evidence was appropriate rebuttal to impeach Williams' assertion that he had not been involved with drugs since 1989. The district court performed the balancing test required under Fed.R.Evid. 403, found that the evidence was not unfairly prejudicial, and gave a limiting instruction to the jury.
 
 
 4
 Williams contends that the district court abused its discretion in admitting this evidence because the government failed to give prior notice that it intended to use Fed.R.Evid. 404(b) material and because the court failed to make a finding on relevancy under Fed.R.Evid. 402. Because Rule 404(b) requires the government to provide notice that it intends to use such evidence in advance of trial upon request of the accused the lack of notice did not preclude use of the information in this case; the defense had not made a request for Rule 404(b) material.
 
 
 5
 Evidence introduced under Rule 404(b) must be relevant, necessary, and reliable. United States v. Rawle, 845 F.2d 1244, 1247 (4th Cir.1988). A finding that evidence is admissible under Rule 404(b) thus encompasses a finding that it is relevant under Rule 402. Once Williams testified that he had no prior involvement with drugs apart from his 1989 conviction for possession of crack, evidence of his recent sale of crack to an undercover officer became relevant as impeachment. The evidence was also necessary to rebut Williams' testimony that he did not deal in drugs. The reliability of the deputy sheriff's testimony was not in question. We find that the evidence of Williams' March 1992 crack sale was relevant and admissible under the Rawle test, and district court did not abuse its discretion in admitting it even though Williams did not have advance notice that the government might use it.
 
 
 6
 During the sentencing proceeding, Williams unsuccessfully challenged the probation officer's recommended finding that the offense involved more than five grams of crack and the recommendation that two criminal history points be awarded for an offense committed while under a sentence of probation resulting from Williams' 1989 crack conviction. United States Sentencing Commission, Guidelines Manual, Secs. 2D1.1, 4B1.1(d) (Nov.1992). In both instances, Williams claimed that his conspiracy with Mathis did not begin until after July 24, 1990, when his one-year probationary sentence ended.
 
 
 7
 On appeal, Williams argues that the district court erred in accepting the government's representation that he and Mathis collaborated in two crack distributions per week between January 1990 and May 1992. We review the district court's determination of the amount of drug involved under the clearly erroneous standard. United States v. Goff, 907 F.2d 1441, 1444 (4th Cir.1990).
 
 
 8
 Mathis testified at trial that he saw Williams two or three times a week at the racetrack between January 1990 and May 1992, except for an unspecified number of months when he was in Florida. He said that when he saw Williams they did not always engage in drug dealing, because Williams also gave him tips on betting. At the sentencing hearing, Mathis testified that he began coming to the track in middle or late 1990, came to the track two or three times a week, and would deal crack with Williams once or twice when he saw him. The government informed the court that Mathis was contesting the date when the conspiracy began in his own case; he had also been under a criminal justice sentence during the early part of 1990, and, like Williams, could receive additional criminal history points as a result.
 
 
 9
 The district court found that Mathis' trial testimony was more credible concerning the date of the beginning of his dealings with Williams than was his testimony at Williams' sentencing. Mathis' trial testimony was corroborated by a statement he had given to drug tasks force agents just before the trial in which he said he dealt crack with Williams about two or three times a week from January 1990 to May 1992.
 
 
 10
 The government's estimate that Williams and Mathis trafficked together for twenty months (eighty weeks) allows for eight months when Mathis did not come to the track and no trafficking took place. (January 1990 through April 1992 is twenty-eight months). Two distributions a week for eighty weeks at .09 grams per distribution* makes a total of 14.4 grams of crack, more than the government's very conservative estimate. Even assuming fourteen months (fifty-six weeks) of trafficking (August 1990 through April 1992, allowing for seven months absence by Mathis), the amount would be 10.08 grams of crack, comfortably within the five-to-twenty gram range for base offense level twenty-six. U.S.S.G. Sec. 2D1.1(c)(9). Therefore, the district court did not clearly err in finding the amount of drug to be over five grams.
 
 
 11
 In deciding that Williams' criminal history score had been correctly calculated by the probation officer, the district court again found that Mathis' trial and pre-trial testimony was more reliable than his testimony during the sentencing hearing, and determined that the conspiracy began before Williams' probation ended. We review this factual finding for clear error, United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir.1989), and do not find it clearly erroneous.
 
 
 12
 The conviction and sentence are therefore affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 13
 AFFIRMED.
 
 
 
 *
 The smallest amount distributed by Mathis in controlled buys