39 F.3d 1179
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Dwayne Ivan MCDONALD, Defendant-Appellant.
 No. 93-5685.
 United States Court of Appeals, Fourth Circuit.
 Submitted: June 14, 1994.
Decided: October 27, 1994.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Herbert N. Maletz, Senior Judge, sitting by designation. (CR-93-125)
 James K. Bredar, Federal Public Defender, Denise C. Barrett, Assistant Public Defender, Baltimore, Maryland, for Appellant.
 Lynne A. Battaglia, United States Attorney, Barbara S. Sale, Assistant United States Attorney, Baltimore, Maryland, for Appellee.
 D.Md.
 AFFIRMED.
 Before WILKINSON, Circuit Judge, and PHILLIPS and SPROUSE, Senior Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Dwayne I. McDonald appeals from his jury convictions and sentences for robbery by intimidation (18 U.S.C.A. Sec. 2113(a), (g) (West 1984 & Supp.1994)), assault during a robbery (18 U.S.C.A. Sec. 2113(d), (g) (West 1984 & Supp.1994)), and use of a firearm in relation to a crime of violence. (18 U.S.C.A. Sec. 924(c) (West 1984 & Supp.1994)). The court sentenced McDonald to ninety-six months of incarceration on the first two convictions and a consecutive sixty months on the third. In addition, Appellant must be under supervised release for three years and pay an assessment of $150. Because we find that if the court committed error at all in admitting various items of evidence, such error was harmless given the other evidence that linked Appellant to the crime and because we find that the court properly enhanced his sentence for obstruction of justice under U.S.S.G. Sec. 3C1.1, we affirm Appellant's convictions and sentences.
 
 
 2
 McDonald's convictions stem from an incident that occurred in January 1993 at a federal credit union. A black male entered the credit union and briefly sat at a table. The man then approached a teller window and placed a bag that appeared to contain several brochures in front of her. He requested that the teller put all of her money in the bag. When the teller hesitated, the man pointed a gun at her head; she then complied with the man's request.
 
 
 3
 The robber then vaulted over the teller counter and pointed his gun at the other teller; he grabbed some money from her drawer and fled. After triggering the alarm, one of the tellers observed the robber leave in a dark sports car. The robber got away with about $10,000.
 
 
 4
 Both victims gave the police a detailed description of the robber, which included his physical traits and the clothing he was wearing. One teller later positively identified Appellant as the robber; the other recognized a jacket and shoes seized from Appellant's apartment as being like those worn by the robber. When shown photographs seized from Appellant's apartment, both tellers stated that a shirt worn by Appellant in one picture looked like the one the robber wore.
 
 
 5
 At the time the robbery occurred, Appellant was romantically linked with Jessica Miller ("Miller"), who worked in the same building where the credit union was located and had an account there. Appellant had accompanied Miller to the credit union at least once. Miller suspected Appellant was involved in the robbery because he fit the description the tellers gave and because he began spending large sums of money at about the time the robbery occurred.
 
 
 6
 When her relationship with McDonald deteriorated, Miller spoke with FBI agents about her suspicions. The FBI found that McDonald's fingerprints matched prints found at the robbery scene; his palm prints matched prints found on the teller counter, and his right thumb print was found on one of the brochures handled by the robber. McDonald possessed about $700 in cash when he was arrested. Miller consented to a search of her apartment, where FBI agents found two pairs of shoes that matched the size and design of shoe prints lifted from the teller counter and the tellers' description. They also found $400 more in cash and some photographs of Appellant wearing clothing like the clothing described by the tellers.
 
 
 7
 Miller visited McDonald at the jail where he was held after his arrest. He inquired about the money seized by the FBI agents and instructed her to transfer title to a car they had purchased together to another girlfriend. He informed Miller that if she did not follow his instructions, he would tell authorities that she was involved in the "first" robbery. He inquired about what she told the FBI and stated that he recalled her making a deposit on the day of the robbery. Miller testified that McDonald intended to testify that he was with her when she made the deposit in order to explain the presence of his palm print on the counter. He informed Miller that she "could either be on their [the government's] side or his side, and don't cross him." Miller took their conversation to mean that she should state that he was with her in the credit union on the day of the robbery. At McDonald's sentencing, the court found this conduct amounted to obstruction of justice under U.S.S.G. Sec. 3C1.1 and enhanced his sentence accordingly.
 
 
 8
 McDonald raises several issues regarding the admissibility of various items of evidence: ammunition that Miller found in her apartment; Miller's testimony that McDonald preferred to be called "Killer;" and her statement that McDonald derived income from selling drugs. McDonald contends that these items of evidence were irrelevant because they were not sufficiently related to his charged offenses and that the evidence should have been excluded under Fed. R. 404(b) because the items were improper character evidence.
 
 
 9
 Rule 403 of the Federal Rules of Evidence permits the exclusion of relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion or delay. The appraisal of the probative and prejudicial value of evidence is entrusted to the sound discretion of the trial court and will not be disturbed absent extraordinary circumstances. United States v. Morison, 844 F.2d 1057, 1078 (4th Cir.), cert. denied, 488 U.S. 908 (1988).
 
 
 10
 Under Fed.R.Evid. 404(b), evidence of prior bad acts is not admissible to show character, but may be admitted to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. The balancing test of Rule 403, however, must be undertaken to determine whether the probative value of the evidence outweighs its prejudicial effect. Evidence of prior bad acts is admissible under Rule 404(b) only if the evidence is relevant to an issue other than character, necessary, and reliable. United States v. Rawle, 845 F.2d 1244, 1247 (4th Cir.1988). Admission of such evidence is reviewed for abuse of discretion. United States v. Mark, 943 F.2d 444, 447 (4th Cir.1991).
 
 
 11
 The court admitted as evidence ammunition that Miller provided the FBI sometime after McDonald's arrest. Miller testified that McDonald kept a revolver in their apartment under the bed; that she had seen him with the gun; and that she found the ammunition under the bed when she vacated the apartment. The Government sought to admit the evidence to counter testimony from one of the tellers on cross-examination that the gun used in the robbery "could have been a replica." The only objection raised at trial was that the evidence was irrelevant.
 
 
 12
 We find that there are no extraordinary circumstances in this case that warrant disturbing the trial court's assessment that the evidence was relevant to counter testimony that at least implied that the gun used was not real. Since the bullets and Miller's testimony tended to establish that McDonald possessed the appropriate ammunition and stored it in the same place where he stored a gun, we find that the court did not abuse its discretion in admitting the evidence.
 
 
 13
 Miller also stated that McDonald went by the nickname "Killer." He asserts that testimony concerning the nickname was irrelevant and extremely prejudicial because it "brings to mind criminal conduct." As the Government notes, two photographs of Appellant were already admitted into evidence without objection with the name "Dwayne 'Killer' McDonald" written on the back.
 
 
 14
 If an alias is not proven or if the alias is not linked with the criminal acts charged, it may be stricken from an indictment upon the appropriate motion. United States v. Clark, 541 F.2d 1016, 1018 (4th Cir.1976). Though the Government did not establish the relevance of the testimony concerning the nickname, we find that, at best, admission of the testimony was harmless error. The testimony was cumulative of evidence that was already admitted without objection. In addition, since there was substantial other evidence of McDonald's guilt, it is "highly probable that the error did not affect the judgment." United States v. Nyman, 649 F.2d 208, 212 (4th Cir.1980).
 
 
 15
 Miller also testified that she thought that McDonald derived his income from selling drugs. The Government elicited the testimony from Miller on redirect after the defense implied on crossexamination that she was involved in the robbery because she was close to Appellant. The court specifically instructed the jury not to consider any evidence "suggesting that the defendant was involved in drugs" because it was "completely irrelevant." Prejudice may be obviated by a cautionary or limiting instruction, particularly if the danger of prejudice is slight in view of the overwhelming evidence of guilt. United States v. Masters, 622 F.2d 83, 87 (4th Cir.1980). We find that even if the testimony was irrelevant, its admission was harmless because, given the court's curative instruction, it is highly probable that it did not affect the verdict.
 
 
 16
 The court enhanced McDonald's sentence two levels for obstruction of justice under U.S.S.G. Sec. 3C1.1 over his objection. Under that section, an offense level may be increased by two levels if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede the administration of justice during the investigation, prosecution, or sentencing of the instant offense." United States Sentencing Commission, Guidelines Manual, Sec. 3C1.1 (Nov.1992). "[T]hreatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so," is conduct that is covered by the enhancement. U.S.S.G. Sec. 3C1.1, comment. (n.3).
 
 
 17
 This Court must give "due deference" to the sentencing court's application of the guidelines to the facts. 18 U.S.C.A. Sec. 3742 (West 1985 & Supp.1993). When the issue is primarily a factual determination, this Court uses a clearly erroneous standard of review. When the issue is more purely a legal issue, the standard of review is closer to de novo. United States v. Daughtrey, 874 F.2d 213 (4th Cir.1989).
 
 
 18
 The court specifically stated that it found Miller's testimony concerning her conversation with McDonald at the jail credible. Given her statements that McDonald instructed her how to testify and warned her not to "cross him," we find that the court's assessment of the facts was not clearly erroneous. We also find that the court did not err in enhancing McDonald's sentence under the guidelines. We therefore affirm his convictions and sentences. We dispense with oral argument since the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED