UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 95-5421

EDWIN ROBERTO RUBIO,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Herbert N. Maletz, Senior Judge, sitting by designation.
(CR-94-432-PJM)

Argued: March 7, 1996

Decided: June 17, 1996

Before WILKINSON, Chief Judge, and WILLIAMS and
MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Martin Gregory Bahl, FEDERAL PUBLIC DEFEND-
ER'S OFFICE, Baltimore, Maryland, for Appellant. Joseph Lee
Evans, Assistant United States Attorney, Baltimore, Maryland, for
Appellee. **ON BRIEF:** James K. Bredar, Federal Public Defender,
Denise C. Barrett, Assistant Federal Public Defender, Baltimore,
Maryland, for Appellant. Lynne A. Battaglia, United States Attorney,
Joseph H. Young, Assistant United States Attorney, Baltimore, Mary-
land, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Edwin Roberto Rubio appeals his convictions for aggravated sex-ual abuse, <u>see</u> 18 U.S.C.A. § 2241(a) (West Supp. 1995), sexual abuse of a minor, <u>see</u> 18 U.S.C.A § 2243(a) (West Supp. 1995), and assault with intent to commit a felony, <u>see</u> 18 U.S.C.A. § 113(a) (West Supp. 1995), for which he is serving concurrent sentences of 135 months imprisonment. He seeks a new trial, contending that: (1) the district court erred in excluding evidence allegedly exonerating him by show-ing that a Government witness may have committed the offenses; (2) the district court erred in giving a flight instruction to the jury; and (3) the Government's alleged vouching for a witness during its clos-ing argument deprived Rubio of a fair trial. Finding no error, we affirm the convictions.

I.

The charges against Rubio stemmed from evidence that he assaulted and attempted to rape a fifteen-year-old girl, Lilian Silva, alongside the Baltimore-Washington Parkway in Washington, D.C.[1] On the evening of the assault, Silva asked Juan Robles for a ride from a nightclub in Virginia to her home in Maryland. Rubio and another passenger known only as "Oscar" were in the car with Robles. Over the course of several hours, Robles, Rubio, Oscar, and Silva drove aimlessly around metropolitan Washington, D.C., while Silva begged to be taken home. Eventually, Robles pulled to the side of the Park-way, and the three men dragged Silva out of the car. Rubio then punched her in the face, pushed her to the ground, and attempted to rape her. Robles and Oscar drove away and, after the assault, Rubio

_____

[1] The Baltimore-Washington Parkway is located within the special maritime jurisdiction of the United States. <u>See</u> 18 U.S.C.A. § 7(3) (West 1969).

2

fled into the woods. Silva flagged down a motorist who took her home. Approximately two months later, the United States Park Police obtained a warrant for Rubio's arrest, but were unable to locate him. A Park Police investigator eventually learned that Rubio had moved to Dallas, Texas, and coordinated his capture.

A grand jury thereafter indicted Rubio on charges of aggravated sexual abuse, sexual abuse of a minor, and assault with intent to commit a felony. At Rubio's subsequent trial, the Government's case rested heavily on the testimony of Robles and Silva. In his defense, Rubio argued that this was a case of mistaken identity, asserting that it was Robles who raped Silva and that Silva mistook Robles for Rubio because she was intoxicated when the assault took place.

To advance this theory, Rubio sought to introduce evidence of two prior incidents involving Robles: his juvenile adjudication for fornication with a minor approximately five years earlier (the juvenile incident) and his suspected involvement in a rape that took place in Arlington, Virginia, three months before Silva was assaulted (the rape incident). On the Government's motion in limine, the district court excluded substantive evidence regarding the two incidents. Recognizing, however, that Robles would be a "key witness" in the Government's prosecution of Rubio (J.A. at 20), the court permitted Rubio to question Robles's character for truthfulness and bias on the basis of the two incidents without delving into the details underlying them.

Pursuant to this ruling, the Government read into the record during its direct examination of Robles the first of two stipulations: "The parties stipulate and agree that the following fact is true, and you can regard this agreed fact as true: Juan Robles has a prior adjudication of juvenile delinquency for sexual relations with a 13 year old minor when he was 15 in Arlington County, Virginia." (J.A. at 46.) The district court then delivered a limiting instruction to the jury: "[E]vidence with respect to [Robles's] prior adjudication of juvenile delinquency is being received only for the issue of Mr. Robles's character for truthfulness. That is the only purpose for which the court is allowing such evidence to be received." (J.A. at 47.) During his subsequent cross-examination of Robles, Rubio's counsel asked Robles about his age and the girl's age when the juvenile incident occurred.

3

Next, Rubio's counsel read a second stipulation into the record regarding the rape incident: "Juan Robles is presently a suspect in an investigation involving an attempted rape in Arlington County, Virginia." (J.A. at 51-52.) A limiting instruction from the court also followed this stipulation:

> That evidence has not been offered to show that Mr. Robles is actually guilty of or committed some other crime, nor has it be[en] offered or received in evidence to show that he acted in conformity with that allegation in the contexts of this case. It has been received only for its possible bearing on Mr. Robles's bias, that is, . . . for whatever bearing it may have on Mr. Robles's desire to [curry] favor with the prosecution in this case.

(J.A. at 52.)

During his direct examination, Robles testified that he encountered Rubio shortly before Rubio moved to Dallas and told Rubio that police were looking for him. A lead investigator for the Park Police corroborated Robles's account, testifying that Robles previously had told police and prosecutors that the conversation occurred. This testimony was later commented upon by the Assistant United States Attorney (AUSA) during closing arguments. The AUSA remarked that Robles was asked about the conversation on direct examination because the AUSA knew that Robles previously had reported the conversation with Rubio.

Following closing arguments, the district court's jury charge included a flight instruction based on Rubio's move from Washington, D.C., to Dallas after the assault. The district court instructed the jury that "the flight of a defendant after he knows he is to be accused of a crime may tend to prove that the defendant believed that he was guilty." (J.A. at 122.)

The jury convicted Rubio of all three counts, and he now appeals his convictions.

II.

Rubio seeks a new trial, urging the Court first to find that substantive evidence of Robles's past sexual misconduct was admissible

4

under the Federal Rules of Evidence and that its exclusion deprived him of his right to present a complete defense under the Fifth and Sixth Amendments of the Constitution. Second, Rubio contends that the district court erred in delivering a flight instruction to the jury because it impermissibly permitted the jury to infer Rubio's guilt from the fact that he moved to Texas after the assault on Silva occurred. Third, Rubio contends that he deserves a new trial because the AUSA committed misconduct that deprived Rubio of due process of law. According to Rubio, the AUSA improperly inferred in closing rebuttal argument that the Government had extrarecord knowledge about the alleged conversation that occurred between Robles and Rubio shortly before Rubio moved to Texas. After examining each of Rubio's contentions in turn, we affirm his convictions.

A.

On the Government's motion in limine to exclude evidence regarding the juvenile and rape incidents, the district court ruled that Rubio's claim that the evidence showed a common scheme or plan under Rule 404(b) of the Federal Rules of Evidence was patently without merit.**2** The court therefore barred Rubio from presenting extrinsic evidence regarding the incidents during his direct examination of witnesses. Moreover, while permitting Rubio to cross-examine Robles about the incidents, the district court also ruled that Rubio could not question Robles about specific details regarding the incidents in order to prevent a mini-trial about the issues and an undue waste of time under Rule 403.**3**

_____

**2** Rule 404(b) of the Federal Rules of Evidence provides that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

**3** Rule 403 of the Federal Rules of Evidence provides that:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

5

Rubio first argues that evidence regarding the juvenile and rape incidents was relevant and admissible under Rule 404(b). Before the district court, Rubio argued that the evidence qualified for admission under Rule 404(b) because it was "proof of a common scheme or plan on Robles's part to attack young women." (J.A. at 20 n.3.) On appeal, Rubio contends that the juvenile and rape incidents demonstrated Robles's intent, plan, and lack of mistake when he allegedly assaulted Silva. Rubio also claims that the Due Process Clause of the Fifth Amendment and the Compulsory Process Clause of the Sixth Amendment guarantee his fundamental right to call witnesses and present any evidence that would raise doubts about his guilt. We conclude that the district court's exclusion of the evidence was neither an abuse of discretion under the evidentiary rules nor an infringement of Rubio's constitutional rights.

1.

We review the district court's exclusion of evidence under the Federal Rules of Evidence for an abuse of discretion. See United States v. Francisco, 35 F.3d 116, 118 (4th Cir. 1994) (per curiam), cert. denied, 115 S. Ct. 950 (1995). We will not intervene in a trial court's "appraisal of the probative and prejudicial value of evidence" absent extraordinary circumstances. United States v. Morison, 844 F.2d 1057, 1078 (4th Cir.), cert. denied, 488 U.S. 908 (1988). Thus, unless the district court's evidentiary rulings were "`arbitrary or irrational,'" we shall not reverse Rubio's convictions. See United States v. Powers, 59 F.3d 1460, 1464 (4th Cir. 1995) (quoting United States v. Haney, 914 F.2d 602, 607 (4th Cir. 1990)), cert. denied, 116 S. Ct. 784 (1996).

In attempting to introduce Rule 404(b) evidence against Robles, Rubio invokes a "rarely-used variant of Rule 404(b), known as `reverse 404(b).'" United States v. Stevens, 935 F.2d 1380, 1401-02 (3d Cir. 1991) (footnote omitted). Whereas we frequently confront defense challenges to the Government's use of Rule 404(b) evidence to incriminate the accused, we have not previously ruled on an accused's attempt to present Rule 404(b) evidence to exonerate himself. The defensive use of Rule 404(b) may be "`most important when [the accused] alleges that he is a victim of mistaken identification,'" as Rubio alleges here. Stevens, 935 F.2d at 1402 (quoting 2 Wigmore,

6

Wigmore on Evidence § 304, at 252 (J. Chadbourn rev. ed. 1979) (emphasis omitted)). We need not decide today, however, whether to join other circuits in recognizing a defendant's right to produce reverse 404(b) evidence because the evidence that Rubio sought to introduce was inadmissible under Rule 404(b).

Whether offered by the Government or the accused, Rule 404(b) evidence is admissible only if it is "(1) relevant to an issue other than character, (2) necessary, and (3) reliable." United States v. Rawle, 845 F.2d 1244, 1247 (4th Cir. 1988) (footnotes omitted). To be relevant, the evidence "must be sufficiently related to the charged offense." Id. at 1247, n.3. Reverse 404(b) evidence is sufficiently related to the offense only if "`it tends, alone or with other evidence, to negate [the accused's] guilt of the crime charged against him.'" Stevens, 935 F.2d at 1404 (quoting State v. Williams, 518 A.2d 234, 238 (N.J. Super. 1986)).

Not only must an accused demonstrate that the reverse 404(b) evidence is probative of his innocence, he also must show that Rule 403 considerations do not substantially outweigh the probative value of the evidence. See id. at 1405 ("[A] defendant must demonstrate that the `reverse 404(b)' evidence has a tendency to negate his guilt, and that it passes the Rule 403 balancing test"). For example, in Rawle we noted that "[e]ven if the evidence is admissible under Rule 404(b), its probative value must be weighed against the danger of undue prejudice aroused by the evidence." Rawle, 845 F.2d at 1247. Of course, in the context of reverse 404(b) evidence, "prejudice to the defendant is not a factor." Stevens, 935 F.2d at 1404. A trial court nevertheless must examine other Rule 403 considerations such as the dangers of confusing or misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence. See Fed. R. Evid. 403. If it finds these considerations substantially outweigh the probative value of the evidence, the trial court has the discretion to exclude the reverse 404(b) evidence. See, e.g., United States v. McLernon, 746 F.2d 1098, 1117 (6th Cir. 1984) (affirming district court's exclusion of taped conversations regarding past acts of Government informant proffered under Rule 404(b) because the tapes contained "little probative value").

7

We conclude that the district court did not abuse its discretion in excluding the reverse 404(b) evidence that Rubio proffered. First, the district court properly determined that the evidence was inadmissible under Rule 404(b) because it was not sufficiently related to the charged offenses. Evidence regarding the juvenile and rape incidents did not tend to negate Rubio's guilt of the charged offenses because they were dissimilar to Silva's assault, and because the evidence shed no light on Silva's ability to identify her assailant. Rubio's weak offer of proof regarding the incidents did not suggest that the same assailant may have perpetrated the extrinsic offenses and Silva's assault.[4] The evidence established only that the juvenile incident took place five years earlier when Robles was fifteen years old, and it involved a thirteen-year-old girl. Moreover, while the rape incident took place shortly before Silva's assault, Robles was no more than a suspect in the rape incident, and Rubio produced no evidence connecting the rapist in that attack to Silva's assailant.

Furthermore, Rubio could not establish that Robles's past acts had any bearing on Silva's ability to identify her assailant. This is not case where other victims of similar crimes previously misidentified their assailant. See Stevens, 935 F.2d at 1402 (discussing cases in which reverse Rule 404(b) evidence was admissible because the defendant previously had been falsely mistaken for the actual perpetrator of the crimes). To the contrary, the reverse 404(b) evidence did not cast doubt on Silva's ability to distinguish between Robles and Rubio. She had been with both men for several hours before the assault occurred and later described their appearances in detail to a police sketch artist. Rubio's reverse 404(b) evidence therefore was not relevant to the charged offense; consequently, it was not probative of his innocence and was properly excluded. See Rawle, 845 F.2d at 1247.

Second, even if the evidence was sufficiently related to the charged offenses, the dangers of undue delay and jury confusion substantially outweighed whatever probative value the reverse 404(b) evidence may have held. The evidence thus was also inadmissible under Rule 403. While the district court permitted Rubio to cross-examine Robles

_____

[4] The record does not reflect that Rubio proffered any specific substantive evidence, either documentary or testimonial, regarding the extrinsic acts.

8

briefly about his five-year-old adjudication for juvenile delinquency, the court found that "any further inquiry into this matter will be needless and an undue waste of time." (J.A. at 20.) The district court likewise restricted the scope of Rubio's cross-examination of Robles regarding the rape incident in order "to prevent a mini-trial on the issue." (J.A. at 22.) Thus, although marginally useful for impeachment purposes, the introduction of a five-year-old juvenile offense and Robles's suspected involvement in an unrelated rape as substantive evidence in Rubio's trial would have aroused significant Rule 403 considerations.

Under similar circumstances, the Eighth Circuit recently affirmed the exclusion of reverse 404(b) evidence proffered by a defendant accused of arson under Rule 403. In United States v. Flaherty, 76 F.3d 967, 973 (8th Cir. 1996), the district court excluded evidence that a third party had set another fire shortly before the fire underlying the arson charge against Flaherty, reasoning that the probative value of the proffered evidence was "slight," the defense made a "weak offer of proof," no evidence connected the third party to the charged offense, and the fires were dissimilar in origin. Thus, the reverse 404(b) evidence regarding a third party's possible culpability was inadmissible under Rule 403.

Likewise, Rubio's offer of proof was weak, he had no evidence connecting Robles to the charged offense other than his presence at the scene, and the extrinsic offenses were dissimilar to the charged offense. Balanced against the low probative value of this evidence were the dual risks of confusing the jury by introducing evidence regarding the details of the juvenile and rape incidents and of unduly delaying the trial while Rubio presented this evidence through the direct examination of witnesses. Because these Rule 403 considerations substantially outweighed the probative value of the reverse 404(b) evidence, we must conclude that the district court did not abuse its discretion in excluding this evidence. Because the district court's evidentiary rulings were neither arbitrary nor irrational, we affirm. See Powers, 59 F.3d at 1464.

2.

Rubio also posits that his right to present a complete defense under the Fifth and Sixth Amendments comprises his right to present the

9

reverse 404(b) evidence because it could have raised doubts in jurors' minds about his guilt. The exclusion of exculpatory evidence may deprive an accused of due process, see Chambers v. Mississippi, 410 U.S. 284, 302-03 (1973); therefore an accused's "right to call witnesses may sometimes trump state and federal evidentiary rules and statutes." United States v. Abbas, 74 F.3d 506, 510 (4th Cir. 1996), cert. denied, No. 95-8821, 1996 WL 226834 (U.S. May 28, 1996). The reverse 404(b) evidence Rubio proffered, however, was not exculpatory, and thus there is no constitutional basis for overriding the evidentiary rules under which the district court excluded the evidence.

There is no constitutional right to introduce evidence that is unrelated to the charged offense. See United States v. Saunders, 943 F.2d 388, 391 (4th Cir. 1991), cert. denied, 502 U.S. 1105 (1992). In Saunders, a defendant accused of rape sought to introduce evidence of the victim's prior sexual relationship with a third party on the theory that this evidence showed that she was a prostitute who consented to sexual intercourse with the defendant. Id. at 391-92. Noting that an accused has a right only "to present admissible evidence that is probative of his innocence," we soundly rejected Saunder's contention that he had a constitutional right to admit evidence about the victim's past sexual acts. Id. at 391. In Saunders, the rape victim's past sexual conduct was not probative of the question of her consent to the rape for which Saunders was on trial. Id. at 392.

Likewise, we have concluded that the reverse 404(b) evidence that Rubio sought to admit held little if any probative value with respect to the charges against him. It neither showed "the government's failure to prove the offense[s] charged," id. at 391, nor established Rubio's mistaken-identity defense. Therefore, excluding the evidence did not deprive Rubio of his constitutional right to present a complete defense. To the contrary, Rubio had every opportunity to present a complete defense, and he in fact introduced other evidence from which a jury could infer that Silva mistook Robles for Rubio. See United States v. Perkins, 937 F.2d 1397, 1401 (4th Cir. 1991) (noting that exclusion of evidence under evidentiary rules did not deprive defendant of the opportunity to present other evidence critical to his defense and thus did not transform the exclusion into constitutional error). Moreover, Rubio cross-examined Robles about the two inci-

10

dents, greatly ameliorating any unfairness in the limitation on his ability to call witnesses about the incidents. See United States v. Hinkson, 632 F.2d 382, 386 (4th Cir. 1980) (affirming district court's exclusion of direct testimony regarding confession by third party and finding no constitutional violation in part because defendant had the "freedom to cross-examine" the third party about his alleged oral confession). The district court's evidentiary rulings thus did not infringe Rubio's exercise of his constitutional right to defend himself fully.

B.

Rubio next seeks to reverse his convictions on the ground that there was insufficient factual support to justify the district court's flight instruction to the jury. Over defense objection, the district court instructed the jury that "the flight of a defendant after he knows he is to be accused of a crime may tend to prove that the defendant believed that he was guilty." (J.A. at 122.) The district court further instructed the jury that flight does not always reflect feelings of guilt and that the jury had to determine the significance, if any, of Rubio's moving from Washington, D.C., to Texas. Rubio claims this instruction was in error. In view of the facts that he moved to Dallas at least two months after the assault on Silva took place and was unaware police were looking for him when he moved, he asserts, any inference of guilt from his move to Dallas was impermissible.

A jury may draw a weak inference of guilt from circumstantial evidence that the accused was aware that law enforcement authorities were searching for him and that he fled from authorities out of consciousness of his guilt. See United States v. Beahm, 664 F.2d 414, 419-20 (4th Cir. 1981). If the Government relies on a defendant's flight as evidence of his guilt, it must establish an adequate evidentiary foundation to support that inference. See United States v. Hawkes, 753 F.2d 355, 358-59 (4th Cir. 1985). "The requisite factual predicate ensures that the evidence is probative in a legal sense and protects the defendant against the possibility of the jury drawing unsupported inferences from otherwise innocuous behavior." United States v. Amuso, 21 F.3d 1251, 1260 (2d Cir.), cert. denied, 115 S. Ct. 326 (1994).

Reviewing the district court's decision to deliver a flight instruction for abuse of discretion, see United States v. Russell, 971 F.2d

11

1098, 1107 (4th Cir. 1992), cert. denied, 506 U.S. 1066 (1993), we find no error. Although flight evidence as proof of guilt may be of dubious probative value, see Wong Sun v. United States, 371 U.S. 471, 483 n.10 (1963), we find that the record here supports the inferences necessary to warrant the instruction given. The evidence adduced by the Government at trial showed that Rubio relocated to Dallas only after he learned that the Park Police obtained a warrant for his arrest in connection with the assault on Silva. Robles testified that he informed Rubio in mid-August 1994 that the police were looking for him. Based on Robles's cooperation with authorities and Silva's positive identification of Rubio as her assailant, police obtained an arrest warrant and attempted to execute it on August 18th in Rubio's last known neighborhood. Several hours after the search, Rubio arranged to move to Texas. An acquaintance, Louis Hernandez, testified that Rubio borrowed a telephone to call his brother in Dallas, Texas, at 9:22 p.m. on August 18th, as confirmed by telephone records. Finally, the Government produced an identification card dated August 25th that Rubio obtained in Dallas.

In view of this evidence connecting Rubio's relocation to his knowledge that police were looking for him, we cannot say that the district court abused its discretion in giving the flight instruction. Moreover, the instruction was moderate in tone, tempering the possibility that the jury drew any improper inferences of Rubio's guilt. We therefore reject Rubio's challenge to his convictions on the basis of the flight instruction.

C.

Finally, Rubio contends that he deserves a new trial because the prosecuting AUSA made improper remarks during closing argument regarding the conversation between Robles and Rubio shortly before Rubio moved to Texas. The conversation was an important factor supporting the district court's decision to deliver a flight instruction, and the parties disputed whether it actually took place.

As part of its case, the Government questioned Robles about the conversation and later elicited the testimony of the Park Police's lead investigator to the effect that Robles previously had described that conversation to prosecutors long before trial. Finally, during closing

12

arguments, the AUSA made the closing statements that Rubio challenges here in reference to the AUSA's direct examination of Robles:

> Well, you know for a fact that in meetings with the lawyers that Mr. Robles had said that, described that conversation, and you know why you know that for a fact is because when Robles was on the stand [the AUSA] said stayed[sic] to him: Now directing your attention to, approximately, two weeks after you were arrested did you have an opportunity at that time to have a conversation with Mr. Rubio? Do you think [the AUSA] was just guessing? I mean he knew what the answer was going to be because Robles had said it before. That is why the question was asked.

(J.A. at 120.) Although Rubio failed to object to these statements at trial, he now claims the statements constituted an improper attempt to corroborate the testimony of the Government's witnesses with the personal, extrarecord knowledge of the AUSA.

Because Rubio did not object to the statements, we review their submission to the jury for plain error. See United States v. Olano, 507 U.S. 725, 732 (1993). Reviewing for plain error in the context of alleged prosecutorial misconduct, we "review the entire proceedings to see if the misconduct undermined the trial's fundamental fairness." United States v. Adam, 70 F.3d 776, 780 (4th Cir. 1995). Read in context, the remarks that Rubio challenges here were not improper; hence, we find no error in their admission.

A prosecutor's vouching for the credibility of Government witnesses poses the unacceptable risk that the jury may infer that the prosecutor has "special knowledge of the truth." United States v. Beaty, 722 F.2d 1090, 1097 (3d Cir. 1983). This risk arises because "the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence." United States v. Young, 470 U.S. 1, 18-19 (1985). Although he or she may not intimate special knowledge about the case, a prosecutor, like defense counsel, may support closing arguments before the jury with reasonable inferences flowing from the evidence in the record.

13

We find that the AUSA here drew precisely such inferences from the record evidence concerning the conversation between Robles and Rubio. In cross-examining the Park Police's lead investigator, Rubio's counsel proceeded on the theory that Robles never told the Park Police or prosecutors about his alleged conversation with Rubio in mid-August and that Robles first raised the conversation during his testimony at Rubio's trial. The investigator, however, testified, "[Robles] told me [about the conversation during an] . . . interview with the United States Attorneys. I didn't do a report for that interview." (J.A. at 108.) Thus, the record before the jury contained testimony that Robles previously had told prosecutors about his conversation with Rubio, a prior consistent statement corroborating Robles's testimony at trial. The AUSA drew directly on this evidence in the record. In light of the investigator's testimony, the jury had no reason to believe that the AUSA was relying on special knowledge about whether Robles had made a prior consistent statement to the police about the conversation with Rubio. Under these circumstances, the remarks did not constitute plain error. Moreover, even if the remarks were error, we would not reverse Rubio's convictions. The district court's jury instructions cured any error by specifically admonishing the jury not to consider as evidence the attorneys' questions to witnesses or their arguments to the jury. We therefore reject Rubio's appeal on this ground.

III.

Because we find no error in either the evidentiary rulings or flight instruction of the district court or the Government's closing arguments, we affirm.

AFFIRMED

14